Thank you, Your Honors. Good morning. My name is Dan Laughton, and I'm here on behalf of the appellant, 621 Two. I would like to reserve five minutes for rebuttal, if that's all right. There are three points I wish to address to the Court this morning. The first one is— Senator Kouskos, could you speak a little louder, please? Yes, I'm sorry, Your Honor. I didn't bring any hearing aids today. Sorry about that. The first point is the District Court's really disregard, I think, is a fair word for the Revenue and Taxation Code statute that is very important, Section 23304.1, which essentially said the transfers were voidable and not void. Number two, the mistaken attribution to my client of a concession, of a lack of capacity. There was no such concession. And number three, the District Court's adverse credibility determination as to Peter Starflinger, which we think is forbidden by the law of this Court as following Anderson v. Liberty Lobby and that trio of Supreme Court cases on summary judgment. So the first point, the statutory issue, Section 23304.1, says that when you have a corporation or an entity that doesn't have good status, it is in a state of suspension, transfers or transactions that it makes are voidable and not void. And Judge Gutierrez viewed these transfers in 2015, the grant deed and the assignment of the litigation, as void. He called them purported transfers. And so his logic, which of course my able opponent agrees with, is that the predecessor entity, because it was suspended, didn't have capacity to transfer property. That being the case... Well, I don't think it's relevant that it didn't have capacity to transfer property. It didn't have capacity to sue. And that's the deficiency that your successor entity, your client, inherited. And so until that tax deficiency is remedied, even you as the assignee don't have the capacity to sue. That's as I understand California law. Am I wrong on that? Judge Weifert, I want to make sure I understand your question. Are you asking whether the statute deprived the predecessor entity of capacity to do the transfer in the first place? No. Just forget about the statute. I'm thinking about the California cases that your opponent has cited. Yes. I think what they show is that the entity that's in the tax deficient status lacks the capacity to sue. So it can't bring the action that you now want to bring. It can transfer its assets to your client, but your client inherits the incapacity to sue until the tax deficiency is corrected. And as I understand it, that didn't occur possibly until after the statute of limitations had run. I agree with you, Judge Weifert. That's a correct view of the California law. However, the district court misapplied that law in our view because even if the predecessor entity lacked capacity to sue, it still had the capacity to transfer these assets, right? What asset in particular are you talking about? If you're talking about the claim against the other party in this case, they can certainly transfer that. But if the assignee is going to be suing on it, the defendant would have all the defenses, it would have against the S&R, correct? Yes, Your Honor. And so the defense that was raised in this case against the S&R is that you lack capacity to enforce this claim because of the issues we've just talked about. And so I'm having difficulty figuring out why it matters whether the transfer was void or voidable. It's just the problem is that your client, your client number two stands in the shoes of your client number one. Here's why it matters, Judge Hurwitz. It's because it was only 6212 who could have voided the transfer of the grant deed. No, I'm assuming that, let's assume the transfer was completely valid, neither void nor voidable, but completely valid. It's still an assignment and assignees still stand in the shoes of their S&Rs. And the S&R in this case lacked capacity to sue. So that's the question I think both Judge Watford and I are asking is, wholly apart from whether the transfers were void or voidable, don't they have the same defense against number two that they would have had against number one, which is that you lack the capacity to sue? If they'd raised that defense, Your Honor, but they did not raise that defense in their answer. They did not raise it until this motion. Isn't that the basis of the district court's ruling? The basis of the district court's ruling is that, is essentially twofold. Number one, that my client 6212 conceded a lack of capacity below. It did, but it did not set that aside. We know that one had a lack of capacity, correct? Yes, Your Honor. But here's the important caveat to that. The predecessor entity that owned this property had the power to transfer it, the property, the land at West Rosecrans, the access agreement and the rights to litigate on it. And it did that transfer in 2015. Judge Gutierrez said, no, it didn't. That was just a purported transfer. And so 621 LLC, the first entity, the predecessor entity, continued to own the land after 2015 and it didn't sue within the four-year limitations period. And that being the case, the statute ran and 6212, the only plaintiff we have, doesn't own anything, doesn't have any standing. Let me try this again because we're missing each other and maybe that means I'm missing something. The claim that is the subject matter of this lawsuit arose before the transfer? Yes? I would say the contract was certainly signed before the transfer, but there was ongoing activity postdating the transfer that we think was actionable. Well, as to anything that occurred before the transfer, wouldn't the defendant in this case have had a defense against the asset or which is to say you lack capacity to sue? If they'd asserted it. Okay, put that aside. I'm just asking whether they would have one. I mean, we can figure out what the consequence of your contention that they failed to assert it is. But putting aside whether it was asserted, under the law, wouldn't they have such a you can't you can't. Yes, they would. You can't stand in six. I'm going to call it number one. Number one shoes. Number two. Yes, because number one couldn't sue me. I agree with that. Okay, so as to that, you're you're you're content. And I understand your point. Your contention is that that's a great defense, but they never raised it. That's one problem that I think they have. Okay, but and here's another one is the Rubenstein Rubenstein case. And we think this is a very argument was made by the defendant in that case. They said the plaintiff, Mr. Rubenstein, is suing on debts that were assigned to him by entities that lost their capacity because they went into a state of suspension with the Secretary of State. And that being the case, Rubenstein doesn't own these causes of action. And therefore, he lacks capacity. And Mr. Rubenstein stands in their shoes. He inherits their lack of capacity. And the Court of Appeal very emphatically rejected that argument based on the statute and said that's not correct. The statute makes these transfers of the debts voidable by Mr. Rubenstein if he wants or or not. He can he can void them if he elects that option. He didn't do it. Therefore, he has capacity. Whatever the problems of the predecessor entities were. And that's the case here. Except that in that case, the issue of capacity was waived. So the court never dealt with it. That's that's why Rubenstein just is not very helpful here. Yes, it deals with the void versus voidable issue. But as Judge Hurwitz said, we can just set that aside. What we're talking about is the capacity issue. And as I understand it there, that issue had been waived. So there was no reason for the court to waive it. The court did reach the statutory issue in Rubenstein at page 805 and 806 pages 805 and 806. It dealt with the issue as to whether the transfer was void or voidable, right? And that's the exact issue that we're talking about, Your Honor. I don't think so. I think those are separate. That's what I started out by. That's why I stopped you. I think the capacity issue, whether the successor entity inherits the defect is essentially essentially the deficiency. The lack of capacity to see, I think, is separate from the question whether the transfer is void or voidable. It's the same issue, Your Honor, by different labeling, if you will. I just will read a very short excerpt from the court's opinion in Rubenstein where the court writes at the bottom of page 805, it's immaterial that the corporate powers of Lenark and Wells, those were the predecessor entities, were suspended at the time they made the assignments. A contract made by a suspended corporation is not void but only voidable at the request of the party of the contract other than the taxpayer. But I think we're missing each other here, or maybe we just have a different view of the law. That just means that the property rights were transferred. That transfer doesn't matter. The property rights were transferred in that case, but the court never addressed the question of the S&R's capacity to sue and whether or not that affected the S&E's capacity to sue because that issue was waived or admitted or stipulated for purposes of the case. So that's where we're missing each other, but I take it it's because you think the analysis for both questions is the same. If the transfer is voidable and therefore not ab initio improper, then they also can sue in the same way that the transferor could. Is that your position? Yes, Your Honor, and we think the Rubenstein case, and I hate to be tenacious on this, but it does use the word capacity. I think we're all talking about the same thing. I think we're talking about whether a transferee inherits a lack of capacity problem that arises because of it. I think it's well to remember in this setting, what is the purpose of these rules? What is the policy that our legislature in California is pursuing with this statute? It's no mystery. They want businesses to pay their taxes and file their returns and be motivated to do that. Here, that purpose has been served. Well, no, that's where I disagree with you. If your reading of the law were correct, just what happened here, the initial entity could just fall behind on its taxes, not be in a position to sue, say, hey, let's go create another entity, transfer all our assets to that entity, and let that entity sue right away. And then that entity, of course, would never pay the taxes because it could just pursue the lawsuit. So I think actually the purpose of this whole regime is perfectly illustrated by this case. Now, it turns out your successor entity client did eventually, I guess, correct the deficiency, but it's just a question of when in the process that occurred. But the purpose of the whole regime was met here, wasn't it? I'm sorry to differ with you, Your Honor, but the policy of the statute, which is to motivate businesses to pay their taxes and file their returns, has been served by these entities. First of all, 6012, my client, has never been in a state of suspension, has never been delinquent, has never been suspended. 621 LLC was. But you have to come back to 621-1, and the assignment carries the status of 621-1. In other words, 621 was rendered incapable for failure to pay tax. Is there anything in the record which indicates that eventually it actually paid tax within the time of the statute of limitations? Not within that time, Your Honor, but the record does show that the taxes were paid and that the long after the time within the statute of limitations, which is what we're concerned with, are we not? But promptly after learning of it by 621-2, it was done. And therefore, the purpose of this statutory regime was served. And the other statute that we cite goes directly to this point. Isn't that the equitable tolling argument that you're making? No, Your Honor. It's a statutory argument under the Revenue and Taxation Code. These statutes are intended to motivate people to pay their taxes. That's what happened. As soon as Mr. Starflinger learned of this problem, which he did at his deposition, he promptly arranged for it to be done, and it was done. And we have asked for judicial... But you agree that the capacity of 621-1 to sue only was restored once he paid the taxes? That's true, Your Honor. But the statute that goes along... It doesn't restore it retroactively. It doesn't restore it retroactively. I think I agree with that. But the other statute that we have, 233, I believe 05.1, provides for an opportunity to cure delinquent taxes by an opportunity to pay the taxes later and be restored, have the transaction okay. And that statute was cited to Judge Gutierrez below, and the district court's decision completely ignores it. It just silently glides by. That statute simply means that after they do that, the transaction is no longer void or voidable. The movement of property. But it doesn't have anything to do with their capacity to sue, does it? It has everything to do... I think where we're missing each other in this case, or maybe we're not missing each other, maybe one of us is wrong, is that you're equating the ability to transfer property with the capacity to sue. And Rubenstein seems to suggest to me they're two separate concepts. Capacity to sue is a property right that can be transferred. Maybe that's... Maybe that's where... I understand where our disconnect is. And that right is not a theoretical or academic right in this case because the transfer was not only of the land at West Rosecrans, it also expressly referred to litigation and rights under the access agreement. So, if you will, capacity to sue was transferred. And if that transfer was a real transfer, because it wasn't voided, which it wasn't, then the district court's decision is wrong per force because Judge Gutierrez viewed that transfer as only purported. It never happened, according to him. And that means that the only company that had capacity or would have had capacity to sue, had the right to sue because only it owned the land, didn't within the four-year period. And that's wrong. What happened here really is as follows. The transfer happened in 2015. 6212 and only 6212 could have voided it at its election, didn't. So, the right to sue, if it later arose, passed with the grant deed. And then 6212, within a four-year period after that, filed suit. It learned of the delinquency. It promptly took care of it and paid it. Ironically, the most innocent party in this whole case is my client, 6212. It didn't do all the damage at this building. It didn't put contaminants in the soil. It didn't destroy a garage roll-up door. And the record demonstrates that your innocent client is completely independent of 6212? Well, completely independent. Doesn't it share directors and owners? Well, here's what the record says. Look, you may have a great argument, but innocence isn't one of them. This record gives me no evidence of innocence. I mean, you've gone over... What did they do wrong? What are they guilty of? You just told me that I'm assuming 6211 was guilty of doing whatever. Yes? Of not paying franchise taxes? No, no. Of doing the polluting and doing all the other things. No, the person that did all... They're a different entity. They didn't do any of the stuff the first entity did. No one... Well, stop. Stop. This is not relevant to the case, but you brought it up. Is 6212 completely independent? No co-owners of 6212 and 6211? Here's what the record says about that, Judge Hurwitz. It says that there is one member, Peter Starflinger, who's a member of both entities. That's right. Is there anybody else who's a member of both? I don't believe the record says there is. No, that's not what I'm asking. Is there anybody else who's a member of both? I don't know. Well, since you're proclaiming the innocence of the second one, even though you're assuming for purpose of that question that the first one was guilty, it seems to me that having common members makes me skeptical about that. Makes me skeptical that... You're entitled to transfer from one to the other, but don't tell me this record establishes the absolute innocence of the transferring. Your Honor, I... Well, when I said innocence, Your Honor, I was using that term generally and broadly, and here's the point I was trying to... I think what you meant was immunity. No, no. What you meant was once we transfer this claim to the second person, it's the second person's claim and we're not worried anymore about what the first person did. That's your position in the case. It may be legally correct. I don't want to take you far over on this. It's just sometimes when you go past the time limit and start making claims that aren't supported by the record, it troubles me. Your Honor, I haven't said one thing that isn't supported by the record. So you think this record supports your contention that 6212 is innocent of anything that 6211 did wrong? Yes. 6212 succeeded to the rights under this contract, which was breached... If I could just finish, Your Honor. I'm sorry. I'm trying to answer your question. Go ahead. Breached by Mr. Paradise's client. There's a lot on the record about the damage that they did to this property. 6211, the predecessor entity, tried to work with them over a period of years. There was a transfer that was done in 2015 and 6212 continued that process. Lost a lot of money in the intervening time. The defendant, Leggett and Platt, did not uphold its contractual obligations. And as soon as 6212 learned that there was a tax delinquency, it promptly addressed it. And a lot of companies don't do that. For example, in the CalWestern case, which is relied on by Mr. Paradise, the predecessor entity counsel said, they're not going to pay the delinquent taxes. They have no intention of doing it and to heck with it. Well, that's not an innocent party. That's a tax scoff law. And we don't have that here. Okay. I get your point. I won't hold the innocence argument against you. I think it's wrong. I won't hold it against you. Okay. If this dialogue has come to a conclusion. Yes, I think it has. I have. Any further questions? Okay. We'll give you a couple minutes for a bubble. I'm sorry to go over, Your Honor. And I'm sorry to differ with you, Judge Hurwitz, but I just... I don't think, by the way, I don't think their innocence or lack of it has anything to do with this case. And so whether or not we disagree about whether the record establishes it, it doesn't affect the decision in this case at all. In a way, it does. Well, use your rebuttal time for that. Thank you. Let's hear from counsel for the defendant. Good morning. May it please the court. My name is Derek Paredes, and I have the privilege of representing the appellee, Leggett and Platt, with this matter. Can I start you off with the Rubenstein case? Of course. I'd be happy to go there. Because let's assume that it says what Judge Watford and I suggested and said, which is that there's two separate issues. But the court also said the defense must be raised or it's waived. And your opponent says, in this case, you never raised it. So what's your response to that? The Rubenstein case, as the court pointed out, deals with standing. It does address the capacity and the waiver argument. And it says on capacity. Correct. It's a defense and must be asserted. And as soon as it was asserted, the party in that case with the problem fixed it. And there was no statute of limitations issue. So they could go ahead. Was it asserted here? So in this case, statute of limitations was the actual defense that was relied on by the court. Capacity is how they got there. The lack of capacity. We cited a bunch of cases in our opposition brief where lack of capacity was raised for the first time at summary judgment. And the Ninth Circuit and the Court of Appeal have held that it is not waived. The difference between the case of the Rubenstein case, in this case, it was raised for the first time after trial. It was raised after the judgment had already come down. It was not raised on a summary judgment or before the actual trial went forward. And so that is why Judge Gutierrez found that we did not waive that argument. And all of those cases that we cited, that it's proper to hold that capacity is not waived by bringing it prior to trial, which we did here. So that's why I think Rubenstein is a little bit different. We do have a lot of case law that say you can assert a defense for the first time on summary judgment. Were they prejudiced by you asserting it so late? In other words, had you asserted it earlier? Could they have fixed the statute of limitations problem? No, Your Honor. And what goes to show that is that after we brought it up in March of 2021, the issue wasn't even corrected until April of 2022, a year and a month later. So there is nothing that would have given them the opportunity to correct this before we brought it up. The statute of limitations had already run. Your friend suggested there was ongoing actionable things that your client did. I thought this was a breach of contract for not paying. It is a breach of contract for not repairing the interior of the building. Is that a continuing violation, or is that something that occurs at a point in time? No, I believe what counsel was referring to was the ongoing settlement discussions after the breach occurred. But the Acuna case, which we cited, says ongoing settlement discussions do not toll the statute of limitations. The statute of limitations happens when the breach occurred. I'm trying to figure out when the breach occurred. There didn't seem to be a dispute in the briefing that the breach occurred more than four years before the lawsuit. There is a dispute. The statute of limitations would have run from the time of the breach. But I heard in your friend's argument that maybe there were ongoing actions that gave rise to the ability to sue. Is there anything in the record about that? There is. The appellee believes that the statute of limitations began to run when the appellee did not repair the inside of the building, when the breach of contract occurred. The appellant argues that the breach occurred when settlement negotiations broke down in 2016. Regardless, the case wasn't filed until 2020. They waited all four years and filed just a couple weeks before the appellant claims that the statute of limitations was set to run. Assuming that the settlement negotiations aren't the accrual. I'm just trying to be clear on the record because I hadn't thought of that until your friend raised it. There's no action that occurred within four years other than the breakdown of the settlement negotiations. That's correct. That's what I needed to know. And I would like to just provide a little bit of clarity if I can. I think I understand where the breakdown is occurring with appellant. I think there's an overall confusion between standing and capacity and the court's use of the words purported or attempted, I believe, were just neutral words where the court was just trying to say alleged because this is no bearing or no material effect on the actual outcome of the case. These transfers, in fact, in order to find that the lack of capacity transferred from 621 LLC to 6212 LLC, Judge Gutierrez had to find that that assignment agreement was valid and enforceable because if it found... See, my difficulty with that argument is it's not that the lack of capacity transferred. It's that 6212 was standing in the shoes of 6211. I'm not sure that lack of capacity is a property that gets transferred. I apologize. I misspoke. I meant to say that the assignment of rights, the assignment of all rights that happened in January of 2015, Judge Gutierrez had to have found that to be enforceable and valid in order for 6212 to assume all of the rights from 6211, including the lack of capacity. So even though he used the words purported, there's nowhere in that opinion where Judge Gutierrez says that was void or voidable or anything to that effect. This has to do with capacity and statute of limitations. I thought the judge did say that basically the successor entity never acquired good title to the property due to this. It did not. It used the word purported. That's the only thing in the entire opinion where it addressed it. The court said the purported or attempted transfer when referencing the transfer of property, but it never addressed whether or not it was void or voidable because that had nothing to do with the capacity argument. That would have been towards the standing argument, and standing would have been affected had that right not transferred, but the court never addressed standing. So in addition to the statute of limitations argument in this case, you raised the defense. See, I know the court never got to it, but I'm trying to figure out why it was that you guys were at odds with each other. It was over repair of the property, wasn't it? Correct. It was over repair of the interior of the building. Our position is that 6211 was acting unreasonable and demanding way too much money for the repair of the inside of that building, and we continually attempted to repair the inside, and we are hey, you got to pay us a completely unreasonable amount of money, but that all went to another argument that we raised, which Judge Gutierrez didn't even address in the actual ruling, which was prevention of performance. We believe it's undisputed that there was a prevention of performance, but Judge Gutierrez didn't. I'm not interested in the merits of those arguments. I'm again trying to figure out when the cause of action accrues under those arguments. The cause of action, of course, is them suing you to collect money. Correct. And is the money not due until you finish talking about whether or not the amount of repairs was correct? It is not, no. The actual damage to them occurred in 2013 when the repair did not occur, and we handed the building back to them, and they realized, whoa, there's no repairs here. But even if you take their position, the latest possible point that the statute of limitations could have run, or started to run, would be in June of 2016. This case was not filed until May of 2020, four years later, just a couple weeks to spare. So what my point is, if we would have notified right away, if we would have discovered it right away, say it was our problem that we didn't discover it sooner, and Leggett and Platt said, hey, you're suspended by the Franchise Tax Board. You can't proceed. You have no capacity. It would have had two weeks to fix their capacity issue. And as the record shows, it took them a year to get the capacity issues resolved. Could you address, and we didn't have time to get to it with your friend, equitable tolling? Of course, yes, I'd be happy to address that. So I'd like to start with the equitable tolling that this was only raised after we notified six months ago. Assume it's in front of us. Okay. Assume that it's in front of you. It's a narrow remedy that should only be applied in special situations, very special situations. And I'd like to point the court to the Cassiopeia case. The Cassiopeia case, the defendant, or the plaintiff there, asked for an equitable exception to this statute of limitations and capacity issue, and the court held an equitable exception is not available to Cassiopeia to prevent application of Revenue and Taxation Code Section 23301. The court held that this would undermine the purpose of Section 23301 having teeth in that And so the Cassiopeia case found that equitable solutions to this problem are not available to a party that wasn't paying taxes and was suspended by the franchise. But the problem with the district court's ruling is that it was on summary judgment, and the court essentially made a credibility finding against, is it Mr. Starflinger? Is that his name? Yes. On subjective good faith. Mr. Starflinger says that, listen, I had no idea that this was a problem. As soon as I found out about it, I took steps to correct it. And the judge basically said, well, I just don't believe you. And I don't know. Is that permissible at summary judgment? It seems like not. I believe it is permissible. And let me explain why. So the court was only addressing the third element in the equitable tolling, which is objectively reasonable and subjectively in good faith. The court looked at this and was trying to determine whether the party's actions were fair, proper, sensible in light of the circumstances. Mr. Starflinger, is that the? That's correct. I was a principal of both LLCs. The term varies from state to state. It could be member or director or whatever. But I was part of both LLCs. And I never knew that we were suspended. Understood. Let's assume that that's a fact. Would that create an issue of fact? That would not create an issue of fact. And the reason why is because the self-serving declaration with conclusory terms is simply not believable to afford a reasonable inference. And I can explain why factually. Factually, in his declaration, Mr. Starflinger indicated that he was the CEO of Star Management, the company in charge of managing the property at 621 Rosecrans. He was a member of both 621 LLC and 6212 LLC. He also testified that he was the agent and representative of the owner for all purposes related to the property. Something that the district court didn't even pick up on is he was the agent for service of process for 621 LLC with his address listed. And that's a 3-325. He says, I didn't know. And so there's something in the record that says, well, everybody agrees that the notice of suspension was received by the agent designated for process? Well, I think the issue is it's the appellant's burden of proof here to prove equitable tolling. But that's not what the judge said. And that's what troubles me about it. I mean, I think it may not be enough for one person to say, I didn't know, because I'm not sure we can impute the absence of knowledge. And I'm not even sure that the absence of knowledge tolls the statute. But that's not what the judge said. The judge said, I don't believe you. Probably, that's a credibility finding, isn't it? No. Well, Your Honor, it is important to note that this is an issue to be decided by the court. This is not a jury issue. So equitable tolling will ultimately be decided by the court. Yeah, I know, but even so, summary judgment before the court is different than a trial before the court. Good faith might have been a jury issue. Correct. And no, good faith, it says, the case law comes out that equitable tolling is only to be decided by the court. And that's, I can provide you with a cite to that. Do you think it's a legal issue? It is a legal issue. But it does depend on the facts. It does depend on the facts. But it is the judge who determines the facts. But regardless of all that. But he didn't determine the facts here after the opportunity of somebody to take the stand and be subject to cross-examination, et cetera. He determined them on the papers. Now, this is where that would be harmless there, if anything, because Judge Gutierrez did go to the next paragraph and say, even if I did believe everything that he said, there was insufficient evidence in the record for me to find objective reasonableness and subjective good faith. And I will point the court to the timeline alone will support Judge Gutierrez's ruling that this timeline was not explained by the appellant in any briefing, which to me shows some evidence of bad faith. June of 2014, 621 LLC suspended by the Franchise Tax Board. Just a couple months later, in October of 2014, 621 LLC executes a deed transferring the property to 6212. And then two months later, in January of 2015, they entered into an assignment agreement transferring all rights from 621 LLC to 6212 LLC. We have the same member of 621 LLC and 6212 LLC. I believe the only reasonable inference from the timeline is that this entity was created to transfer all of the property rights and assign all of the rights held to a new entity in good standing so they could proceed with litigation. Yeah, I'm not sure that's the only reasonable inference, but maybe your better argument is that on this record, they have the mere lack of knowledge by Starflinger doesn't necessarily establish the fourth element, which is subjective good faith. That's correct. Mr. Starflinger's declaration saying, I did not know that 621 was suspended by the Franchise Tax Board, that would go to objective reasonableness, not subjective good faith. There's nothing in the record for the court to look at and point to and say, there's the evidence of subjective good faith. What would that evidence even look like, other than a declaration from someone like Mr. Starflinger? Other than a declaration from Mr. Starflinger saying, hey, I acted in good faith. I did not know any of this occurred. Had I known, I would have corrected immediately, which he says now, which all goes to reasonableness, but good faith would be doing something before entering into that assignment agreement, doing the bare minimum to research, seeing if that entity was suspended by the Franchise Tax Board before entering into an agreement to take on all of the rights of that other entity. That's reasonableness and good faith that is missing from here. Or maybe some evidence saying, look it, here's all of the notices from the Franchise Tax Board went to somebody else. They didn't come to me. They went to Joe Schmo, who has no affiliation with 621 LLC. But by simply saying, I didn't know about it, I don't believe that gets you to good faith or objective reasonableness. And Judge Watford, I promise this will be short. I think it's a yes or no question. Of course. Does the record contain those notices? It does not. That was short. All right, you've exceeded your time. You have a concluding point. You're welcome to make it, since we gave your opponent extra time. I do not. I would just thank the court and respectfully ask that the opinion of Judge Gutierrez be affirmed. Thank you very much. Thank you. Let's put two minutes on the clock for rebuttal, please. And before your time starts to run, to make your job easier, forget our previous conversation, because I don't think it really relates to the outcome of this case. And you can deal with the other stuff. Yes, Your Honor, I will. Thank you. Your Honor opened the last segment with a question about whether they asserted lack of capacity as a defense. You can read that in the answer. They didn't. 25 affirmative defenses. Lack of capacity is not in there. We're talking now about when did the breach happen, because Your Honor's question was about that, okay? And as late as June of 2016 is when the statute started to run. Judge Gutierrez assumed that that was true. And Mr. Starflinger's declaration on page 92 of the excerpts of record, he makes clear that it was in May 2016. It was not until June 2016 when Leggett and Platt said it was not making any more payments and was not going to do any more work. That was a breach. The clock was running or started to run in June of 2016, and suit was filed within four years after that. To Judge Watford's question about adverse credibility determinations. You know, Anderson v. Liberty Lobby and this court's decisions following it could not be more clear. That's not why we have summary judgment. You know, Mr. Paradise is here saying, well, I think it's a reasonable inference that can be made from this record. That's exactly what we're not supposed to do on summary judgment, what district judges are not supposed to do. It's odd to me that when we examine the judgment, the first page of the judgment from which this appeal is taken, Judge Gutierrez's judgment says a hearing was held. No hearing was held. He decided this on the papers, and district courts do that often, but trials are not always efficient. Summary judgment's very efficient. You can dispose of a lot of cases with summary judgment, but that doesn't make that process fair if it's incorrectly used, and it was incorrectly used in this case. We have the Fuller decision where this court says the court is not to make adverse credibility determinations. I'm aware of Judge O'Scanlan's opinion in the Villarrealmo case involving the airline employee, but that's a quite different case, Your Honor, we believe, because there was an ample record of Ms. Villarrealmo. She had a lot of opportunity to develop evidence showing she was in a hostile work environment, and she did not do it. Here we have the polar opposite of that. Let Judge Gutierrez have a trial. Yes, equitable tolling is not a jury issue. I get that. But let Mr. Starflinger come into court and be cross-examined in front of Judge Gutierrez, and evidence comes out a lot in trials that doesn't come out in summary judgment under the engine of cross-examination. That's what ought to happen. Your response, if I could, just pivot you to another point, because you're now already on time. Your opponent says, well, okay, put aside whether Judge Gutierrez believed or disbelieved Mr. Starflinger, you had the burden, your client had the burden of proving even objective good faith and reasonableness, and a component of that would be to show somehow that, well, there's just no way we could have known until this late in the day that there, in fact, was this tax deficiency. And I think what he was suggesting is that, really, any corporation engaging in the kind of transaction that your client did would do some kind of due diligence, presumably would have been able to discover, should have been able to discover at that point that there was this tax deficiency, and would have been able to correct it years ago. So, under those facts, why are you entitled to this extraordinary remedy of equitable tolling? I think that's what he was getting at, totally apart from whether Mr. Starflinger is to be believed or disbelieved as to his personal knowledge. I don't think it was my client's burden to prove that there was no way they could have known. But it was your client's burden to establish good faith, because this is a defense, in effect, or an avoidance. So what evidence was there of good faith other than the affidavit that said, I didn't know? His deposition testimony. What did he say in that that's demonstrating good faith? He said, I didn't know that this was the case, and if that is truly the case, I will remedy it as soon as possible. And after that, he did it. The question Judge Watford was framing, because I'm not sure you answered it when he asked it, assume that good faith requires that one does more than not know something and be willing to fix it if he knew, but had gone out and made whatever efforts were usual to determine whether or not there was a problem. That may not be right, but I just want to know. There's no other evidence in this record other than Mr. Starflinger saying, I didn't know, and had I known, I would have fixed it. There is the grant deed that identifies a member of 621 LLC, the first entity, as the signatory of the grant deed. So we know that there is someone else. There's no evidence in this record whether that signatory knew or didn't know. That's right, Your Honor. Or did anything. Yes, that's true. It may not be required, but I'm just trying to make sure I understand the record. There's nothing in this record on this issue other than Mr. Starflinger's declaration and deposition testimony that I didn't know. Recording stopped. And had I known, I would fix it. Now you're off the record. The answer is yes. And then the next question is, does California law require that? Let me ask the next question. OK, but I think it's important to this appeal, and that's the only reason I add it. So I know I'm way over my time. I want to thank the court for its patience and its listening. I appreciate it very much, and so does my client. Thank you. OK, thank you very much. The case just argued is submitted.
judges: O'SCANNLAIN, WATFORD, HURWITZ